IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 16, 2026

## JAVARIUS DESHAWN BAUGH v. STATE OF TENNESSEE[1]

**Appeal from the Criminal Court for Davidson County**
**No. 2016-B-689      Steve R. Dozier, Judge**

_____

### No. M2025-01279-CCA-R3-PC

_____

A Davidson County jury convicted Petitioner, Javarius Deshawn Baugh, of first degree premeditated murder and unlawful possession of a firearm by a convicted felon, for which he received an effective life sentence. Petitioner now appeals the denial of his petition for post-conviction relief, arguing that trial counsel rendered ineffective assistance. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Daniel J. Murphy, Lewisburg, Tennessee, for the appellant, Javarius Deshawn Baugh.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] At the post-conviction hearing, Petitioner testified that his first name was spelled "Javaruis." As is the practice of this court, we will utilize the spelling of Petitioner's name in the indictment and judgments in his underlying case.

## OPINION

## Factual and Procedural Background

A Davidson County grand jury indicted Petitioner for the first degree premeditated murder[2] of Terry Stewart and for unlawfully possessing a firearm after having been convicted of a violent felony.[3]  Petitioner proceeded to a jury trial, where the proof established that in the early morning hours of December 27, 2015, officers with the Metropolitan Nashville Police Department responded to a shots-fired call at the Buena Vista Apartments.  *See State v. Baugh*, No. M2019-01916-CCA-R3-CD, 2021 WL 1590053, at *1 (Tenn. Crim. App. Apr. 23, 2021), *perm. app. denied* (Sept. 22, 2021).  There, officers found the victim fatally wounded, lying across the front step of one of the apartments.  *Id*.  Petitioner was arrested during a traffic stop roughly twenty-five minutes later.  *Id*. at *2.  A search of the vehicle in which Petitioner was a passenger revealed a Glock 20 handgun that matched spent shell casings recovered from the crime scene.  *Id*. at *2, *4.  Petitioner was also wearing clothing similar to that worn by the shooter, as depicted in surveillance footage taken from the apartment complex.  *Id*. at *4.  The driver of the vehicle placed Petitioner at the crime scene within minutes of the shooting and told police that he overheard Petitioner telling another person that Petitioner needed to "lay low" after the shooting.  *Id*. at *2-3.  Videos extracted from Petitioner's two cell phones depicted him brandishing a gun that looked similar to the Glock 20 recovered at the time of his arrest.  *Id*. at *3-4.  The parties stipulated that, at the time of the incident, Petitioner previously had been convicted of a qualifying violent felony offense.  *Id*. at *4.

The jury convicted Petitioner as charged, and he received an effective life sentence.  *Id*. at *1.  This court affirmed Petitioner's convictions on direct appeal.  *Id*.

Following the denial of his direct appeal, Petitioner filed a timely pro se petition for post-conviction relief, alleging that his trial counsel ("Counsel") provided ineffective assistance in various ways.  The post-conviction court appointed new counsel, who then filed an amended petition.  Petitioner also filed a petition for post-conviction DNA analysis, which the post-conviction court later denied.[4]  As relevant here, Petitioner alleged that Counsel failed to adequately investigate the circumstances of the shooting, including locating potential alibi witnesses who could have testified for the defense.  Petitioner named only Gabriel Parrin as a potential alibi witness whom Counsel failed to present at trial.  Petitioner was the only witness who testified at the post-conviction hearing.  Counsel

---

[2] *See* Tenn. Code Ann. § 39-13-202(a)(1).

[3] *See* Tenn. Code Ann. § 39-17-1307(b)(1)(A) (effective July 1, 2014, to June 30, 2017).

[4] The denial of this motion is not the subject of this appeal.

was not present and did not testify. Nothing in the record indicates why Counsel was not called as a witness.

At the post-conviction hearing, Petitioner maintained his innocence, testifying that the actual shooter was James Parks, who died while Petitioner was awaiting trial. Petitioner testified that he relayed this information to Counsel but that Counsel "didn't investigate none of [the] stuff [Petitioner] was telling him." Petitioner claimed he did not learn of the shooting until after his arrest, explaining that he "blacked out" around the time of the traffic stop and did not recall speaking to police. He further claimed that the interviewing officers "violated [his] constitutional rights" by "interrogating [him] while [he] was intoxicated on Xanax bars." When asked how he ended up with the gun, Petitioner responded, "I didn't end up with no gun. That's not my gun. I don't know how that gun got in the car. It's not my DNA on it, no fingerprints evidence, none of that. That's not my gun."

Petitioner testified that he knew Mr. Parrin but that they were not close. Petitioner wished to call Mr. Parrin as a witness but was unable to secure his presence at the post-conviction hearing. Petitioner said having funds to hire a private investigator would have allowed him to secure Mr. Parrin's presence at the post-conviction hearing. When asked why he wanted Mr. Parrin to testify, Petitioner replied, "Because he stated to police when this first happened that, yeah, he was over there early that day, but he wasn't the dude that was brandishing the gun." Although Petitioner claimed that an investigator would have assisted in locating Mr. Parrin, the post-conviction court noted that "[w]e've heard from the private investigator twice. Once at the bond hearing and once at the motion for new trial. Said he found Mr. Parrin's mom, never heard from him. Checked addresses, he wasn't there."

Petitioner further testified that although he had visited the Buena Vista Apartments the evening before the shooting, he had left a "couple of hours" before the shooting occurred. He said that Rodricous Garrett—the trial witness who placed Petitioner at the scene—had told him that James Parks was the actual shooter. When asked whether Mr. Garrett had lied under oath at trial, Petitioner replied, "Yes sir. He ain't no different from me. He been to prison, I've been to prison. I'm in prison. His story is not reliable."

At the conclusion of the hearing, the post-conviction court took the matter under advisement and issued a written order denying relief on July 24, 2025. The court found that despite Petitioner's testimony about Counsel's failure to locate Mr. Parrin for trial, Counsel's private investigator had made various attempts to locate Mr. Parrin before trial but was unsuccessful. The court implicitly discredited Petitioner's testimony on this point and found that Petitioner had failed to present sufficient proof that Counsel did not adequately investigate Mr. Parrin's whereabouts. On each of Petitioner's claims, the post-

- 3 -

conviction court concluded that Petitioner failed to meet his burden of proof under Tennessee Code Annotated section 40-30-110(f).  This appeal followed.

## Analysis

On appeal, Petitioner argues that Counsel rendered ineffective assistance by "not developing any leads on the true culprit James Parks" and by failing to "call Gabriel Parrin to testify at trial."  Petitioner contends that Mr. Parrin would have corroborated Petitioner's claim about the identity of the "true culprit."  The State argues that the post-conviction court properly denied relief because Petitioner failed to present Mr. Parrin, or any other witness, at the post-conviction hearing.  We agree that the post-conviction court properly denied relief.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."  Tenn. Code Ann. § 40-30-103.  Both our state and federal constitutions guarantee the right to effective assistance of counsel. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9.  Thus, the denial of effective assistance of counsel is a cognizable claim under our Post-Conviction Procedure Act.  *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022).

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," and "the petitioner bears the burden of overcoming this presumption."  *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation modified).  To meet this burden, a petitioner must prove by clear and convincing evidence the facts underlying his ineffective assistance of counsel claim. Tenn. Code Ann. § 40-30-110(f).  A petitioner must then show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984).  In practice, a petitioner must first prove "the *fact* of counsel's alleged error by clear and convincing evidence," and if he meets that burden, the court then assesses whether the error constitutes ineffective assistance of counsel under *Strickland*.  *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009) (emphasis in original) (reconciling statutory burden of proof with *Strickland*).

To establish deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 688.  Thus, deficient performance is representation that falls below "an objective standard of reasonableness" as measured "under prevailing professional norms."  *Id*.  To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

- 4 -

of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

When the issue is that "trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel." *Id.* Failure to present such witnesses at the post-conviction hearing is a failure to show prejudice under *Strickland*. *Id.* at 758.

Failure to satisfy either prong results in denial of relief. *Phillips*, 647 S.W.3d at 401; *Strickland*, 466 U.S. at 697. A claim of ineffective assistance of counsel presents a mixed question of law and fact, which we review *de novo*. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). The post-conviction court's factual findings are presumed correct unless the evidence preponderates against them. *Id.* Conclusions of law, however, receive no deference on appeal. *Id.*

Here, Petitioner claims that Counsel was ineffective for failing to present Mr. Parrin as a defense witness at trial, but Petitioner also failed to present Mr. Parrin as a witness at the post-conviction hearing. *See Black*, 794 S.W.2d at 758. We cannot speculate as to what Mr. Parrin's testimony might have been, *see id.* at 757, and without that testimony, we are unable to know whether his absence from trial resulted in "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Petitioner has failed to show prejudice, and he is not entitled to relief. *See Phillips*, 647 S.W.3d at 401.

## Conclusion

For the reasons above, we affirm the judgment of the post-conviction court.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
